## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

MAURICIO MARTINEZ, on behalf of
himself and all others similarly situated,

       Plaintiff,

                                  Case No. 1:23-cv-21394-RNS

v.

D2C, LLC d/b/a UNIVISION NOW,

       Defendant.

_____/

### PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S
### MOTION TO DISMISS AND INCORPORATED MEMORANDUM OF LAW

Plaintiff, Mauricio Martinez ("Plaintiff" or "Martinez"), hereby submits his Response in Opposition to Defendant D2C, LLC d/b/a Univision NOW's Motion to Dismiss (ECF No. 14), and states as follows:[1]

### INTRODUCTION

This case arises under the Video Privacy Protection Act, 18 U.S.C. § 2710 (the "VPPA"). Defendant, D2C, LLC d/b/a Univision NOW ("Defendant" or "Univision") is a video streaming company that intentionally embedded the software Facebook/Meta Pixel ("Pixel") on its website. *See* Compl., ECF No. 1, at ¶¶ 16-17. Companies like Univision use Pixel to track users' activity on their websites and build information profiles that facilitate targeted advertising. *Id.* at ¶¶ 18-23. Pixel works by assigning each user a unique Facebook ID (or "FID") that directly corresponds to their Facebook account; indeed, typing a user's FID at the end of "facebook.com/" will take one

---

[1] Plaintiff filed a motion for leave to amend his Complaint on July 14, 2023 (ECF No. 22), which is currently pending before the Court. If the Court grants the motion for leave to amend, Defendant's motion to dismiss will become moot.

directly to the user's account. *Id.* at ¶¶ 21-22. Pixel then simultaneously transmits to Facebook the user's FID, along with a URL containing the title of the video he or she requested. *Id.* at ¶¶ 24-27. Univision knew that Pixel would collect and disclose this information but chose to embed it anyways. *Id.* at ¶¶ 16-17, 19-21, 23-24, 29, 58, 62. Univision never obtained the "informed, written consent" required by the VPPA. *See* 18 U.S.C. § 2710(b)(2)(B); Compl., ECF No. 1, at ¶¶ 2, 15, 30-32, 37, 60. As a result, Univision violated the VPPA's prohibition on "knowingly disclos[ing], to any person, personally identifiable information concerning any consumer[.]" 18 U.S.C. § 2710(b)(1).

Plaintiff Mauricio Martinez is a victim of Univision's misconduct. Compl., ECF No. 1, at ¶ 3. He subscribed to Univision by registering for an account and providing information such as his name and address. *Id.* at ¶¶ 3, 33-34. He then watched videos on Univision's website during the same time period in which he had a Facebook account. *Id.* at ¶ 34; Martinez Declaration Translation, attached as Exhibit B, at ¶¶ 4-6.[2] Martinez never consented to Univision disclosing his personally identifiable information. Compl., ECF No. 1, at ¶¶ 38-39. Nevertheless, each time Martinez watched videos on Univision's website, Univision transmitted to Facebook Martinez's FIDs together with the title of the videos he requested or obtained. *Id.* at ¶ 36; *see also id.* at ¶¶ 24-28 (providing illustration of how Pixel functions).

## SUMMARY OF ARGUMENT

Univision moves to dismiss this case for lack of Article III standing under Fed. R. Civ. P. 12(b)(1). *See* Mot., ECF No. 14. The Motion presents no sound basis for dismissal. Defendant purports to seek dismissal based on a lack of Article III standing, arguing (1) Plaintiff did not allege sufficient facts to show that he was harmed and (2) Plaintiff did not watch a prerecorded

---

[2] Martinez's original Spanish-language declaration is attached as Exhibit A.

video on Defendant's website while logged into the website. Defendant's arguments are not challenges to Plaintiff's standing, however, but rather improper attacks on the merits of Plaintiff's claims. Even if Univision's challenges are legitimate Article III arguments, they still fail. The reality here is that Univision has no valid substantive defenses to Plaintiff's claims. Defendant responds to this inconvenient truth with improper substantive attacks under the guise of 12(b)(1) Article III standing arguments.

Univision's arguments lack merit. Univision argues that Martinez did not plead or prove a concrete injury-in-fact because he fails to allege sufficient facts that he was harmed. But the Eleventh Circuit has unambiguously held "that violation of the VPPA constitutes a concrete harm." *Perry v. CNN, Inc.*, 854 F.3d 1336, 1340 (11th Cir. 2017). Therefore, even if Martinez did "not allege any additional harm beyond the statutory violation," he nevertheless has standing. *Id.* Indeed, this Court in discussing *Perry* recognized that "an alleged violation of the Video Privacy Protection Act constituted a concrete injury in and of itself." *Gesten v. Burger King Corp.*, No. 17-22541-CIV, 2017 WL 4326101, at *4 (S.D. Fla. Sept. 27, 2017) (Scola, J.).

Faced with this insurmountable caselaw, Univision offers faulty affidavit testimony averring that "Plaintiff has not watched any prerecorded video on Univision NOW's website," from which it concludes that "Plaintiff cannot demonstrate an injury in fact based on his use of the website." Mot., ECF No. 14, at 11. But this argument goes to the *merits*, not subject-matter jurisdiction, so there is no basis for considering extrinsic evidence at the pleadings stage. In any event, Univision is wrong on the law and the facts. The VPPA simply does not require plaintiffs to *view* any videos, so Univision's arguments have no apparent relevance. *See Harris v. Pub. Broad. Serv.*, No. 1:22-CV-2456-MLB, 2023 WL 2583118, at *6 n.3 (N.D. Ga. Mar. 20, 2023) ("Nowhere does the VPPA require that the consumer actually watch the video."); *Lebakken v.*

3

*WebMD, LLC*, No. 1:22-CV-644-TWT, 2022 WL 16716151, at *3 (N.D. Ga. Nov. 4, 2022) (noting that a "person need not have actually watched any of the movies for the act of disclosure" to violate the VPPA). Rather, VPPA liability is based on a video-tape service provider like Univision disclosing "a person as having *requested* or *obtained* specific video materials or services." 18 U.S.C. § 2710 (emphasis added). Thus, Elias Atamian's declaration (the "Atamian Declaration") that Martinez did not *watch* prerecorded videos on the Univision website does not impact Defendant's liability. In addition, as more fully explained below, the declaration cannot be relied upon in any event. Regardless, the Complaint alleges—and Martinez's testimony further shows— that *Martinez did in fact watch prerecorded videos on Univision's website*.[3]

Martinez also has standing to seek injunctive relief. When the Complaint was filed, Univision was actively disclosing subscribers' private information to Facebook, making the requested injunctive relief entirely appropriate. In addition, Defendant has not committed to permanently removing Pixel from its website, so the request for injunctive relief remains valid. Martinez should not be required to make a Hobson's Choice between accessing the videos available under his subscription and having his privacy rights violated.

---

[3] For the reasons set forth herein, the Court should not consider the Atamian Declaration. Plaintiff acknowledges that if the Atamian Declaration cannot be considered, the Martinez Declaration attached in Plaintiff's native language as Exhibit A and the certified translation attached as Exhibit B similarly should not be considered. Plaintiff has included his declaration in an abundance of caution if the Court is inclined to consider extraneous evidence at this stage.

## ARGUMENT

**I.      Martinez Has Article III Standing Because Univision Violated His Substantive Right to Privacy.**

Univision argues that Martinez has not suffered a concrete injury-in-fact. Univision is wrong. The VPPA codifies a substantive right to privacy, and Univision's alleged violation of Martinez's right gives rise to a concrete injury.

The Supreme Court has recognized that intangible harms can satisfy the concreteness requirement—including privacy injuries, such as "disclosure of private information, and intrusion upon seclusion." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021). Congress's recognition of such harms is entitled to "due respect." *Id.* "So when Congress identifies an intangible harm by enacting a law with a cause of action to redress that harm, '[courts] find its judgment 'instructive and important.'" *Drazen v. Pinto*, No. 21-10199, 2023 WL 4699939, at *4 (11th Cir. July 24, 2023) (en banc) (quoting *Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 48 F.4th 1236, 1242 (11th Cir. 2022) (en banc)). Under those circumstances, "the question becomes whether that 'harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts.'" *Id.* (quoting *Hunstein*, 48 F.4th at 1243).

In *Perry*, the Eleventh Circuit applied that framework and held "that violation of the VPPA constitutes a concrete harm." *Perry*, 854 F.3d at 1340. Analogizing to common law privacy torts, the court explained that "the VPPA's creation of a cause of action for this type of an invasion of privacy 'has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts.'" *Id.* at 1340-41 (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016)). And because common law courts did not require plaintiffs to make "a showing of additional harm" in order to recover for invasion of privacy, VPPA plaintiffs "need

not allege any *additional* harm beyond the one Congress has identified." *Id.* (quoting *Spokeo*, 578 U.S. at 342) (internal quotation marks omitted). This Court has recognized that *Perry* stands for the proposition that "an alleged violation of the Video Privacy Protection Act constitute[s] a concrete injury in and of itself." *Gesten*, 2017 WL 4326101, at *4.

Therefore, "[t]he VPPA creates a right to the privacy of one's video-watching history, the deprivation of which—through wrongful disclosure, or statutory violation, alone—constitutes an injury sufficient to confer Article III standing." *Austin-Spearman v. AMC Network Entm't LLC*, 98 F. Supp. 3d 662, 666 (S.D.N.Y. 2015).[4] As this Court has explained, "[t]he requirement of an injury-in-fact does not 'suggest that Congress cannot define new legal rights, which in turn will confer standing to vindicate an injury caused to the claimant.'" *Muzuco v. Re$ubmitIt, LLC*, 297 F.R.D. 504, 512 (S.D. Fla. 2013) (Scola, J.) (citation omitted). So, when Congress enacts statutes "to protect consumers from certain harassing and privacy-invading conduct," and the "Plaintiff has alleged Defendants' conduct violated [those] statutes . . . that is enough to confer upon her standing under Article III." *Id.* The VPPA is one such example. *See Perry*, 854 F.3d at 1340 (holding that plaintiff had standing despite that he did "not allege any additional harm beyond the statutory violation" because the VPPA creates a substantive right to privacy).

Here, Martinez alleges that Univision violated the VPPA by disclosing his personally identifiable information in the form of his FIDs, along with the names of the videos he requested or obtained, to a third party, *i.e.*, Facebook. *See* Compl., ECF No. 1, at ¶¶ 33-38. Univision's

---

[4] "Cases like *Austin-Spearman* are not saying that a plaintiff has standing merely by virtue of having alleged a violation of a statutory right created by Congress in a statute (here, the VPPA). They are saying that the violation of that statutory right entails the kind of injury that is sufficient to confer standing under Article III." *Salazar v. Glob.*, No. 3:22-CV-00756, 2023 WL 4611819, at *6 n.13 (M.D. Tenn. July 18, 2023) (explaining why the conclusion that a VPPA claim necessarily supports Article III standing is consistent with *Spokeo*).

violation of Martinez's statutory right to privacy gives rise to a concrete injury-in-fact, as the Eleventh Circuit and every other federal appellate court to consider this issue have held. *See Perry*, 854 F.3d at 1340-41; *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014); *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 274 (3d Cir. 2016); *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 982-84 (9th Cir. 2017); *Feldman v. Star Trib. Media Co.*, No. 22-CV-1731, 2023 WL 2388381, at *5 (D. Minn. Mar. 7, 2023) ("The conclusion that a plaintiff like Mr. Feldman has suffered a concrete injury for purposes of Article III standing to assert a VPPA claim is supported by every federal circuit court that has considered the issue."). Moreover, at the motion to dismiss stage, Plaintiff "need not definitively prove [his] injury or disprove [Univision's] defenses. [He] has plausibly pleaded on the face of [his] complaint that [he] suffered . . . harm from the [defendant's] action, and that is enough for now." *Tyler v. Hennepin County*, 143 S. Ct. 1369, 1375 (2023) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)).

Despite this legion of case law finding that plaintiffs alleging similar VPPA claims have standing to pursue their claims, Univision still maintains that Plaintiff lacks standing. Defendant's argument is entirely without merit and must be rejected.

## II.     Univision's Additional Arguments Are Wrong.

Univision's core argument is that "[b]ecause Plaintiff has not watched any prerecorded video on Univision NOW's website, Plaintiff cannot demonstrate an injury in fact based on his use of the website." Mot., ECF No. 14, at 11. According to Univision, this means Martinez cannot prove that his information "was shared by Univision NOW through the use of the Pixel." *Id.* at 9. Univision's argument fails on multiple grounds.

**A.**   **Univision conflates Article III standing with statutory standing and improperly introduces evidence outside the Complaint to launch a merits attack.**

As an initial matter, Univision conflates Article III standing with the merits of the claim. Martinez's theories of injury and liability rest on a shared premise—that Univision was disclosing information that the VPPA designated as private. *See Eichenberger*, 876 F.3d at 983 (holding that "*every* disclosure of an individual's 'personally identifiable information' and video-viewing history offends the interests that the [VPPA] protects" and thus supports standing).

Univision's argument is that the disclosures described in the Complaint simply did not happen. But to deny the basic premise of the Complaint is to attack the merits, not subject-matter jurisdiction. Therefore, Univision has not demonstrated a proper basis for dismissal under Rule 12(b)(1), nor has it presented any sound justification for considering extrinsic evidence at the pleadings stage. In addition, Martinez has testified that he *did* in fact watch prerecorded content on the Univision website. Although Martinez acknowledges that this Court cannot consider additional records, Martinez possesses records that Univision shared PII with Facebook, refuting the Atamian Declaration.

The reason that Univision frames its direct substantive attack as a jurisdictional challenge is no mystery— Univision's Rule 12(b)(1) Article III standing argument is an attempt to have this Court consider extraneous evidence. But because Univision's arguments are directed to statutory standing and whether Plaintiff has stated a cause of action under the VPPA, they must be considered under the Rule 12(b)(6) standard. *See In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1219 (C.D. Cal. 2017) ("[S]tatutory standing is properly scrutinized under Rule 12(b)(6)."). As a result, Defendant's reliance on materials outside the Complaint is improper and should be ignored or stricken. "A party mounting a Rule 12(b)(1) challenge to the court's jurisdiction may do so either on the face of the pleadings or by presenting extrinsic evidence for

the court's consideration." *Cholakyan v. Mercedes-Benz USA, LLC*, No. CV 10-05944, 2012 WL 12861143, at *16 (C.D. Cal. Jan. 12, 2012). In contrast to a Rule 12(b)(1) motion, courts considering motions under Rule 12(b)(6) must accept the allegations in the Complaint as true and draw all reasonable inferences in the light most favorable to the plaintiff. *See Vizio*, 238 F. Supp. 3d at 1214. Here, Defendant's arguments are not properly brought under Rule 12(b)(1) because they are not directed at Article III standing. The Court should ignore Defendant's submitted evidence at this stage in the proceedings, which consists only of a self-serving and faulty declaration attempting to refute the veracity of Plaintiff's allegations.

It is well-established that "[s]tanding 'in no way depends on the merits' of the plaintiff's claim." *W. Virginia v. U.S. Dept. of the Treasury*, 59 F.4th 1124, 1135 (11th Cir. 2023) (quoting *Warth v. Seldin*, 422 U.S. 490, 500 (1975)); *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (explaining that standing is not defeated "by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover"). Indeed, when analyzing Article III standing, courts *assume* the plaintiff's success on the merits. *See FEC v. Ted Cruz for Senate*, 142 S. Ct. 1638, 1647 (2022) ("For standing purposes, we accept as valid the merits of appellees' legal claims, so we must assume the loan repayment limitation . . . unconstitutionally burdens speech."); *Culverhouse v. Paulson & Co. Inc.*, 813 F.3d 991, 994 (11th Cir. 2016) (holding that courts evaluating standing must "assume that on the merits the plaintiffs would be successful in their claims"). Therefore, Article III standing is not implicated when the defendant argues that it did not actually violate the VPPA. *See Martin v. Meredith Corp.*, No. 22CV4776, 2023 WL 2118074, at *2 (S.D.N.Y. Feb. 17, 2023) (holding that "whether the precise disclosure is actionable under the VPPA is a question about the merits of [plaintiff's] claim, rather than his ability to bring his case in federal court"); *Vizio*, 238 F. Supp. 3d at 1219 ("[S]tatutory

standing [under the VPPA] is not a question of subject matter jurisdiction but rather an element of a plaintiff's cause of action.").

Similarly, the argument that the alleged injury did not actually occur goes to the merits, not standing. *See Foley v. Tex. Dept. of Family & Protective Servs.*, No. 1:12-CV-270, 2012 WL 6803598, at *6 (E.D. Tex. Nov. 14, 2012) ("Defendants' argument regards the merits of the case, not standing. They do not dispute whether [plaintiffs] allege a violation of a protected right, but whether that violation actually occurred. A Rule 12(b)(1) motion to dismiss is not the correct avenue for making such an assertion."). This is because "the injury requirement examines the quality and nature of the alleged harm," whereas "assertions that the plaintiff has not suffered the injury alleged speak more readily to the substantive elements of particular claims and defenses, rather than the constitutional powers of the federal courts." *Johnson v. Witter*, No. 3:13-CV-00689-MMD-VP, 2015 WL 1505659, at *4 (D. Nev. Jan. 26, 2015). If garden-variety merits arguments were jurisdictional, federal courts would often lack the power to issue binding judgments in favor of the defendant—a strange and unlikely result. *See, e.g.*, *SM Kids, LLC v. Google LLC*, 963 F.3d 206, 212 n.2 (2d Cir. 2020) ("Treating contract formation as jurisdictional would therefore call into question a federal court's ability to issue a claim-preclusive judgment that a contract did not exist."). For that reason, "when federal courts grant summary judgment on the basis that an alleged injury did not occur, they typically do so on the merits, rather than upon jurisdictional grounds." *Johnson*, 2015 WL 1505659 at *4 ("As this discussion implies, there are no genuine standing issues in this case.").

In this case, Univision's argument is that Martinez did not actually watch any videos and, therefore, the allegedly unlawful disclosures described in the Complaint did not occur. But the possibility that Univision did not actually violate Martinez's rights under the VPPA does not

implicate the Court's subject-matter jurisdiction. Because Univision's arguments, properly understood, attack the merits rather than standing, the Court may deny Univision's motion, which invoked only Rule 12(b)(1). *See Avini Health Corp. v. Biogenus LLC*, No. 22-CV-61992-RAR, 2023 WL 2560844, at *2 (S.D. Fla. Mar. 17, 2023) ("When a defendant's standing argument attacks the merits of the plaintiff's claim, however, it is prudent to deny the motion without prejudice and decide the standing dispute at the summary judgment stage."). And because Univision has not presented a true "factual attack" on Martinez's standing, Univision's affidavit testimony is not properly before the Court. *See Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (holding that dismissal based on evidence from outside the pleadings is improper when standing is "inextricably intertwined" with the merits, such that "a decision on one would effectively decide the other"); *U.S. ex rel. Osheroff v. Humana, Inc.*, 776 F.3d 805, 810 n.2 (11th Cir. 2015) (explaining that, while courts may "weigh the parties' evidence" when presented with factual attacks, if the defendant's argument "instead presents grounds for dismissal, a motion to dismiss would be considered under Rule 12(b)(6), and a court must take the facts alleged in the complaint as true").

## B.   Univision's facial attack ignores or mischaracterizes the allegations in the Complaint.

Even if Univision's arguments were relevant to subject-matter jurisdiction, they still do not necessitate dismissal. In support of its facial attack, Univision argues that Martinez "never alleges any specific facts showing that he actually viewed prerecorded videos on the website." Mot., ECF No. 14, at 9. But the Complaint *does* allege that Martinez requested or obtained prerecorded videos on Univision's website. Compl., ECF No. 1, at ¶ 34. He further described the method by which Univision commits these unlawful disclosures and provided an illustration. *Id.* at ¶¶ 24-28. Nothing more is required.

Essentially, Univision's argument is that VPPA plaintiffs must catalogue the title of each video they watched on the defendant's website or attach their browsing history to the Complaint. *E.g.*, Mot., ECF No. 14, at 9 (arguing that Martinez "did not include an image of his own viewing history," or describe "specific instances where he requested or obtained prerecorded videos"). Perhaps that argument would be persuasive if Martinez had alleged "fraud or mistake," in which case he would have to plead "facts as to the time, place, and substance" of Univision's misconduct pursuant to Fed. R. Civ. P. 9(b). *U.S. ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1357 (11th Cir. 2006) (citation omitted). But this case neither sounds in fraud nor alleges mistake, so Martinez need only make "a short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Court should reject Univision's effort to impose a heightened pleading standard. *See Cantu v. Tapestry, Inc.*, No. 22-CV-1974-BAS-DDL, 2023 WL 4440662, at *5 (S.D. Cal. July 10, 2023) (denying motion to dismiss VPPA claim and noting that "[a]t the pleading stage, Plaintiff is under no obligation to provide figures such as screenshots to bolster his pleading") (citing Fed. R. Civ. P. 8(a)(2)); *Stark v. Patreon, Inc.*, No. 22-CV-03131-JCS, 2022 WL 7652166, at *8 (N.D. Cal. Oct. 13, 2022) (rejecting argument that VPPA plaintiffs must specifically allege that their Facebook profiles included their real names and noting that the defendant "cites no authority applying that granular a test, particularly at the pleading stage").

**C.    The Atamian Declaration is flawed and should be ignored.**

The Atamian Declaration is fatally flawed. While Atamian testifies that he reviewed "selected business records," Atamian (1) does not state with specificity the business records he reviewed, (2) does not state that those records are complete, (3) does not include copies of the records with his declaration, and (4) offers no testimony indicating that those records can be reasonably relied on. Rather, he testifies only that he reviewed *some* unidentified records, and that

those records show that Mr. Martinez (1) has not *watched* prerecorded video; on (2) Univision.com; (3) while logged in as a subscriber. Putting aside the fact that Martinez has testified that those assertions are factually incorrect, even if true, Atamian's testimony would not defeat Martinez's standing.

First, although the VPPA requires a plaintiff be a "subscriber" of a video tape service provider to have a valid claim, the VPPA does not require that the subscriber request or obtain prerecorded video materials on Defendant's website "while logged in as a subscriber." And Defendant does not challenge whether Martinez was a subscriber during the relevant time. Defendant thus concedes that Martinez was a subscriber and could have requested or obtained prerecorded videos when *not* logged in on the www.univisionnow.com website. Indeed, although outside this Court's consideration (as are the issues raised in the Atamian Declaration), www.univisionnow.com permits consumers to watch at least certain pre-recorded video content without being logged on to the website. Thus, Martinez could have watched pre-recorded content while not "logged in as a subscriber," which would still violate the VPPA.

Second, Atamian concedes that Martinez watched "live television via one of Univision NOW's livestream channels" at least twice. Atamian Declaration, ECF No. 14-1, at ¶¶ 45-46. Atamian does not state what he means by "live," *i.e.*, whether the "live" television was the broadcast of live content like the live news or a live sporting event, or simply the "live" broadcast (as opposed to on-demand) of a prerecorded television show, which would have been prerecorded unless it was a live broadcast.

Third, Atamian does not offer any testimony regarding whether the unidentified records log everything that a subscriber watches on www.univisionnow.com. If the website does not log all such information, then the documents Atamian relied on would be useless in this regard.

Atamian fails to offer any detail on the foregoing issues and does not even explain whether the unidentified records that he purportedly relied on contain the necessary details. The foregoing are all highly disputed factual issues that cannot possibly be resolved on a motion to dismiss. Rather, Plaintiff must be permitted to conduct discovery on the issues, including by, but not limited to, deposing Atamian.

**D.      Univision's factual attack is contradicted by Martinez's sworn testimony.**

In support of its factual attack, Univision relies entirely on the Atamian Declaration averring that its "records show that Plaintiff has ***not*** viewed any prerecorded video materials through Univision NOW's website." Mot., ECF No. 14, at 11 (emphasis in original). Martinez has sworn under penalty of perjury that he did watch prerecorded videos during the relevant time periods. *See* Martinez Declaration at ¶ 6. The parties must resolve this factual discrepancy through the normal course for resolving factual disputes in litigation—discovery (including a deposition regarding the precise meaning of both parties' representations) and ultimately, a trial. Dismissal at this stage would be improper. *See Lawrence*, 919 F.2d at 1531 ("[F]ederal claims should not be dismissed on motion for lack of subject matter jurisdiction when that determination is intermeshed with the merits of the claim and when there is a dispute as to a material fact."); *Ambrose v. Bos. Globe Media Partners LLC*, No. 21-10810-RGS, 2022 WL 4329373, at *2 (D. Mass. Sep. 19, 2022) (denying motion to dismiss VPPA claim because the defendant's "arguments in favor of dismissal rely on factual disputes that are not appropriate for disposition at this early stage").

**E.      The VPPA does not require that a plaintiff actually *view* any videos.**

Univision's arguments fail independently because they are premised on the mistaken notion that VPPA plaintiffs must plead that they "actually viewed prerecorded videos." Mot., ECF No. 14, at 9. The VPPA includes no such requirement. *See Harris*, 2023 WL 2583118, at *6 (explaining that "[n]owhere does the VPPA require that the consumer actually watch the video");

14

*Lebakken*, 2022 WL 16716151, at *3 (noting that a "person need not have actually watched any of the movies for the act of disclosure" to violate the VPPA).

The VPPA protects against disclosures of "personally identifiable information," which it defines as information showing that a person "requested *or* obtained" videos. 18 U.S.C. § 2710(a)(3) (emphasis added). To "request" a video is merely to "ask for" it, whereas to "obtain" a video is to actually "succeed in gaining possession." AMERICAN HERITAGE DICTIONARY 1250, 1533 (3d ed. 1992). Neither definition requires that a video actually play. One could ask for a video but never obtain it or obtain a video but never watch it. Nevertheless, Congress made a deliberate choice to impose liability on companies who disclose information reflecting that videos were *either* requested *or* obtained. *See Horne v. Flores*, 557 U.S. 433, 454 (2009) (explaining that the "the disjunctive 'or' makes it clear that each of the provision's three grounds for relief is independently sufficient"). Univision's argument artificially limits the VPPA by introducing a requirement not found in the text—*i.e.*, that information must reflect not only that a video was requested or obtained, but also that it was actually watched. *See Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 140 S. Ct. 2367, 2381 (2020) (rejecting argument that would "introduce[e] a limitation not found in the statute").

Judge Bork's case illustrates this point. The catalyst for the VPPA was an incident in which a newspaper published "the titles of 146 films his family had rented from a video store." S. REP. 100-59, at 5 (1988). The fact that Judge Bork rented those movies—*i.e.*, that he requested and obtained them—says nothing about whether he in fact watched them. He could, for example, have rented a movie but simply not watched it. Therefore, whether the plaintiff actually watched a video is irrelevant to liability under the VPPA. Univision has offered no specific reason for why actually viewing a video would be relevant to Article III standing if it is not required by the statute. *Cf.*

*Perry*, 854 F.3d at 1340-41 (holding that VPPA violation necessarily causes concrete injury). In addition, the Atamian Declaration offers no information whatsoever as to whether Martinez *requested* or *obtained* any prerecorded videos—making Atamian's testimony irrelevant. Thus, even if Atamian's testimony could be considered, it has no impact on the validity of Plaintiff's claims or his Article III standing.

Therefore, the Court should deny Univision's motion on this independent basis.

### III.   Martinez Has Standing to Seek Injunctive Relief.

Finally, Univision argues in a footnote that Martinez lacks standing to seek injunctive relief because he supposedly has not alleged any risk of future harm. Mot., ECF No. 14, at 10 n.5. To establish standing to seek injunctive relief, a plaintiff must "assert a reasonable expectation of future injury." *A&M Gerber Chiropractic LLC v. Geico Gen. Ins. Co.*, 925 F.3d 1205, 1211 (11th Cir. 2019). Here, the Complaint alleges that Univision installed Pixel on its website, and that Pixel automatically discloses users' personally identifying information to Facebook. *See* Compl., ECF No. 1, at ¶¶ 17, 20-21, 24-30. Therefore, Univision was actively disclosing its subscribers' information in violation of the VPPA when the Complaint in this case was filed.[5] Martinez is a current Univision subscriber. *See* Martinez Declaration at ¶ 3. Unless the Court issues an injunction, Martinez will not be able to access the videos available under his subscription without

---

[5] Univision asserts in a footnote that Martinez "cannot allege that Univision NOW continues to use the Meta Pixel." Mot., ECF No. 14, at 10 n.5. Perhaps after the filing of this Complaint, Univision has wisely stopped using Pixel. But if Univision has stopped using Pixel, that would still not deprive Martinez of standing. "Article III standing must be determined as of the time that the plaintiff's complaint is filed." *A&M Gerber*, 925 F.3d at 1211. If Univision was still using Pixel when this case was filed, the effect of its subsequent decision to stop using Pixel would be properly analyzed as a mootness issue. *See West Virginia v. EPA*, 142 S. Ct. 2587, 2607 (2022) ("It is the doctrine of *mootness*, not standing, that addresses whether 'an intervening circumstance [has] deprive[d] the plaintiff of a personal stake in the outcome of the lawsuit.'"). This distinction matters, as Univision would bear the burden of proof on mootness. *See id.*

having his information unlawfully exposed to third parties. This suffices to establish standing for injunctive relief.

**CONCLUSION**

For all the reasons stated herein, the Court should deny Univision's motion to dismiss.

July 28, 2023                                    Respectfully submitted,

By: /s/ *Brian Levin*
    Brian Levin, Fla. Bar No. 26392
    Kaki J. Johnson, Fla. Bar No. 1031976
    LEVIN LAW, P.A.
    2665 South Bayshore Drive, PH2
    Miami, FL 33133
    Telephone: (305) 402-9050
    Facsimile: (305) 676-4443
    brian@levinlawpa.com
    kaki@levinlawpa.com
    sarah@levinlawpa.com (secondary e-mail address)

    Matthew R. Wilson (*pro hac vice*)
    Michael J. Boyle, Jr. (*pro hac vice*)
    Jared W. Connors (*pro hac vice*)
    MEYER WILSON CO., LPA
    305 W. Nationwide Blvd.
    Columbus, Ohio 43215
    Telephone: (614) 224-6000
    Facsimile: (614) 224-6066
    mwilson@meyerwilson.com
    mboyle@meyerwilson.com
    jconnors@meyerwilson.com

    ***ATTORNEYS FOR PLAINTIFF AND THE PUTATIVE CLASS***

17