**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 1:23-CV-21394-SCOLA-GOODMAN**

| | |
|---|---|
| MAURICIO MARTINEZ, GUADALUPE RODRIGUEZ, and FRANCISCO GIRON, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>D2C, LLC d/b/a UNIVISION NOW,<br><br>    Defendant. | Class Action |

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE**
**THE TESTIMONY OF PLAINTIFFS' EXPERT DR. SERGE EGELMAN**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. iii

I.      INTRODUCTION ..................................................................................................... 1

II.     FACTUAL BACKGROUND ..................................................................................... 3

        A.      Univision's Installation and Configuration of the Pixel ........................................ 3

        B.      Dr. Egelman's Opinions and Deposition .............................................................. 4

III.    LEGAL STANDARD ................................................................................................ 6

IV.     ARGUMENT ............................................................................................................ 7

        A.      Dr. Egelman Does Not Offer Impermissible Legal Conclusions .......................... 7

        B.      Dr. Egelman's Opinions Are Reliable and Not Speculative ................................ 10

        C.      Dr. Egelman's Martinez Disclosure Opinions Are Reliable ................................ 15

        D.      Dr. Egelman's Testimony Would Assist the Jury ................................................ 17

V.      CONCLUSION ....................................................................................................... 18

# TABLE OF AUTHORITIES

**Cases**                                                                          **Page(s)**

*Daubert v. Merrell Dow Pharms., Inc.,*
509 U.S. 579 (1993) ........................................................................................ *passim*

*Diaz v. Centurion of Fla., LLC,*
2022 WL 21781606 (S.D. Fla. Jan. 25, 2022) ...................................................... 7, 8

*Dopson-Troutt v. Novartis Pharm's Corp.,*
2013 WL 12184290 (M.D. Fla. Mar. 14, 2013) ....................................................... 13

*In re AndroGel Antitrust Litig.,*
888 F. Supp. 2d 1336 (N.D. Ga. 2012) ................................................................. 13

*In re Delta/Airtrust Baggage Fee Antitrust Litig.,*
245 F. Supp. 3d 1343 (N.D. Ga. 2017) .................................................. 7, 10, 13, 15

*Janopoulos v. Harvey L. Walner & Assoc., Ltd.,*
866 F. Supp. 1086 (N.D. Ill. 1994) ...................................................................... 13

*Jordan v. Filippone,*
2021 WL 1564430 (S.D. Fla. Apr. 21, 2021) ............................................ 12, 13, 15

*Kumho Tire Co., Ltd. v. Carmichael,*
526 U.S. 137 (1999) ........................................................................................... 10

*Marmol v. Kalonymus Dev. Partners, LLC,*
2023 WL 6534410 (S.D. Fla. Sep. 5, 2023) ...................................................... 12, 18

*Mizrahi v. Yamaha Motor Corp., USA,*
2019 WL 3318527 (S.D. Fla. July 19, 2019) ........................................................... 6

*Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.,*
326 F.3d 1333 (11th Cir. 2003) ............................................................................. 6

*R & R Int'l, Inc. v. Manzen, LLC,*
2010 WL 3605234 (S.D. Fla. Sep. 12, 2010) .......................................................... 12

*Rink v. Cheminova, Inc.,*
400 F.3d 1286 (11th Cir. 2005) .......................................................................... 6, 9

*Taylor v. Novartis Pharm's Corp.,*
2013 WL 85168 (S.D. Fla. Jan. 7, 2013) ............................................................... 13

*U.S. v. Frazier,*
387 F.3d 1224 (11th Cir. 2004) ............................................................................. 9

**Statutes**

18 U.S.C. § 2710 ................................................................................................ 7, 13

**Rules**

Fed. R. Evid. 702 .................................................................................................... 6

Fed. R. Evid. 704 .................................................................................................... 7

Plaintiffs Mauricio Martinez, Guadalupe Rodriguez, and Francisco Giron respectfully submit this Memorandum of Law in Opposition to Univision's Motion to Exclude of Plaintiffs' Expert, Dr. Serge Egelman.[1]

## I.  INTRODUCTION

Plaintiffs retained Dr. Serge Egelman, a prominent and highly respected expert, to provide an expert opinion on the configuration and operation of the Meta Pixel (the "Pixel") on the Univision NOW website, www.univisionnow.com (the "Website"). Dr. Egelman is a research scientist within the Electrical Engineering and Computer Sciences Department at the University of California, Berkeley. Over the course of his nearly 20-year career, he has testified before the U.S. Senate and various regulatory authorities, has been invited to serve as an expert for several privacy- and security-focused web standards efforts, has received over a dozen awards from the research community, and has had his research cited over 12,000 times.

Univision does not challenge Dr. Egelman's qualifications (nor could it). Nevertheless, Univision asserts that the opinions offered by Dr. Egelman are unreliable, not relevant, and should be excluded. These arguments are meritless.

There is no dispute that Univision ████████████████████████████ ████████████████████████████████████. The Pixel is a piece of code embedded in a website that, by design, transmits certain information known as "event data," to the social media and advertising company Meta (f/k/a Facebook). As Univision has since conceded,



Def. SMF ¶¶9, 10, 13. Remarkably, despite admitting ████████

---

[1] Plaintiffs filed true and correct copies of all exhibits cited herein as exhibits to their Opposition to Univision's Motion for Summary Judgment. *See* Notice of Sealed Filing dated August 7, 2024. In the interests of judicial efficiency and economy, Plaintiffs' citations herein are to those exhibits using those exhibits' naming and identification convention. References to "Motion" or "Mot." are to Univision's Motion to Exclude the Testimony of Dr. Egelman (ECF Nos. 118, 122). References to "Class Cert. Mot." are to Plaintiffs Motion for Class Certification (ECF Nos. 60, 61) and "S.J. Opp." are to Plaintiffs' Opposition to Univision's Motion for Summary Judgment (ECF Nos. 104, 106). References to "Def. SMF" are to Univision's Statement of Material Facts (ECF No. 99). References to the "Egelman Rep." and "Egelman Reb. Rep." are to the Egelman Report (Motion Ex. A) and the Egelman Rebuttal Report (Motion Ex. B), respectively.

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████ (Egelman Rep. ¶9) is somehow "unreliable." This is nonsense.

*First*, Univision's attempts to recast Dr. Egelman's admissible opinions as impermissible legal conclusions is easily rejected. Dr. Egelman testified that ████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ████████████████████████████████ Univision's position is untenable, as evidenced by ██████████████████████████████████████████████ ██████████████████████████████████████ .

*Second*, Univision's attempts to portray Dr. Egelman's conclusions as "blind[] speculat[ion]" wither at the slightest bit of scrutiny. The Egelman Report lays out Dr. Egelman's analysis in detail, including his preparation and considerations for testing, identification and description of ████████████████████████████████████ Dr. Egelman's opinions are supported not only by publicly available information (including from Meta regarding the configuration of the Pixel), but also Univision's own admissions that ██████████████████ ████████████████████████████████ . Indeed, Dr. Egelman's opinions are also confirmed by Meta's ████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ . Notably, Univision does not challenge ██████████████████████████ ████████████████████████████ .

*Third*, while Univision ███████████████████████████████████████ ███████████████████████████████████████████████████ . Univision is factually wrong, but more importantly for present purposes, Univision's disagreements with Dr. Egelman as to ██████████████████████████████ ██████████████████ are disputes of fact. Whether the finder of fact accepts Univision's arguments may impact the weight accorded to Dr. Egelman's testimony, but it does not affect the admissibility

2

of his testimony.

*Finally*, Dr. Egelman's testimony would undoubtedly assist the jury. Aside from Univision's speculation that  Univision protests that it would be "dangerously prejudicial" if the jury heard Dr. Egelman's opinion that Univision's expert failed to account for the possibility that Univision's own data might be missing or incomplete. But Dr. Egelman's opinion—while being entirely accurate—is no more prejudicial than ███████████ ██████████████████████████████████████████████████████████████.

For these reasons, Univision's Motion should be denied in its entirety.

## II.   FACTUAL BACKGROUND

### A.   Univision's Installation and Configuration of the Pixel

Univision NOW is an online, Spanish-language video-streaming service that offers prerecorded videos to its subscribers on its Website. This Action concerns Univision's violations of the Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA") by installing the Pixel on its Website and knowingly programming it to transmit PII without obtaining the statutorily required consent. Univision



Univision Dep. 31:3-13 (Exhibit A).[2]

Specifically, ████████████████████████████████████████████ Univision Dep. 38:5-9. ████████████████████████████████████████████████

As Plaintiffs established in their Opposition to Univision's Summary Judgment Motion, this is personally identifiable information

---

[2] In order to protect subscribers' privacy, here ████████████████████████████████████████ ████████████ Meta Dep. 45:18-25, 96:2-10 (Exhibit J).

within the meaning of the VPPA. S.J. Opp. at 12, 14-16.

      Critically, .

Vint Dep. 134:4-8 (Exhibit D). In fact, in response to a subpoena Plaintiffs served on Meta, Meta



. Exhibit K (META_MARTINEZ_0002,

; Exhibit L (META_MARTINEZ_0003,

Exhibit K at Row 28 & Columns N, T.

Exhibit L at *e.g.*, Rows 2, 96, 132, 288 & Columns A, B, C, D, I, J, L, R, W, & Y.

## B.    Dr. Egelman's Opinions and Deposition

      To provide expert testimony in support of their claims, Plaintiffs retained Dr. Serge Egelman. Dr. Egelman is the Research Director of the Usable Security and Privacy Group and the International Computer Science Institute, which is an independent research institute affiliated with the University of California, Berkeley. Egelman Rep. ¶2 (Motion Exhibit A). He is also a research scientist within the Electrical Engineering and Computer Sciences Department at the University of California, Berkeley. *Id*. Dr. Egelman's research has been cited over 12,000 times during the course of his career. *Id*. ¶¶2-3. His research focuses on computer security, online privacy, and human factors, and he studies consumer privacy and security decision making, consumer privacy preferences, privacy and security expectations, and how those expectations comport with reality. *Id*. ¶3.

      Dr. Egelman is regularly asked to consult for regulatory authorities on privacy issues and has testified before the U.S. Senate based on his research. *Id*. ¶4. Dr. Egelman has also served as an invited expert for several web standards efforts that focus on privacy and security, and has received over a dozen awards from the research community (including privacy research awards from two European data protection authorities, AEPD in Spain and CNIL in France; the USENIX Security Symposium Distinguished Paper Award, from one of the top academic computer security conferences; and seven paper awards from the ACM Special Interest Group on Computer-Human

Interaction, the top human-computer interaction conference). *Id*. ¶3. In light of these credentials, Univision does not challenge his experience or qualifications.

Dr. Egelman submitted the Egelman Report on April 2, 2024 (Motion Exhibit A), and the Egelman Rebuttal Report on June 6, 2024 (Motion Exhibit B).[3] The Egelman Report concludes that ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████ Egelman Rep. ¶52 (Mot. Exhibit A). The Egelman Rebuttal Report concludes that ██████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ██████████████████████████████████████ Egelman Reb. Rep. ¶37 (Mot. Exhibit B). Dr. Egelman was deposed on May 22, 2024.[4]

Univision's Motion attempts to carve up varying pieces of the Egelman Report and Rebuttal Report, and then stitch them back together into a series of ostensible stand-alone opinions. *See generally* Mot. at 4-5. In particular, Univision purports to identify the following opinions: ███ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ██████████████████████████████ Mot. at 4-5.

Notably, Univision's characterization of these "opinions" relies on its own paraphrased

---

[3] Univision claims that Dr. Egelman ██████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████

[4] Univision also notes that Dr. Egelman also submitted a Declaration in connection with Plaintiffs' Reply in Support of Class Certification Motion, filed on May 7, 2024 (ECF No. 74). Univision does not, however, meaningfully challenge this Declaration. (*see* Mot. at 3 n.1), putting forward only a single-sentence objection that cites to no authority or record materials. This summary challenge fails to articulate any basis to exclude the contents of this Declaration under *Daubert* and should be rejected.

summaries and snippets of quotations that are divorced from their context. *Id.* For example,



Egelman Rep. ¶9 (Mot. Exhibit A). Confusingly, Univision also asserts that ████████████████████████████ (Mot. at 4). And while Univision ████████████

Egelman Rep. ¶51. Similarly, while Univision ████████████

Despite Univision's confusing nomenclature, Plaintiffs will refer to that nomenclature herein in the interests of simplicity and for ease of the Court's reference.

## III.   LEGAL STANDARD

Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) govern the admissibility of expert testimony. Courts have observed that Rule 702 and *Daubert* "counsel a liberal approach to the admission of expert testimony." *Mizrahi v. Yamaha Motor Corp., USA*, 2019 WL 3318527, at *12 (S.D. Fla. July 19, 2019).

The Eleventh Circuit has established a three-part test to determine whether expert testimony should be admitted under *Daubert*:

> [W]hether: "(1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue."

*Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291-92 (11th Cir. 2005). Univision only challenges the second and third parts here.

In considering a *Daubert* challenge, "it is not the role of the district court to make ultimate



conclusions as to the persuasiveness of the proffered evidence." *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003). Rather, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* (quoting *Daubert,* 509 U.S. at 596).

## IV.   ARGUMENT

### A.   Dr. Egelman Does Not Offer Impermissible Legal Conclusions

Univision challenges portions of the Egelman Report and Egelman Rebuttal Report—which it terms the ██████████████████████████—because in its view, Dr. Egelman is articulating legal opinions. Mot. at 8-10. Not so. While his opinions and analysis may embrace ultimate issues in this case, that is well within the purview of what an expert is permitted to do. Univision cannot point to a single instance in which Dr. Egelman purports to ████████ ██████████████████████████. This is because all of Dr. Egelman's opinions and analyses are factual—not legal—in nature.

*First*, the portion of the Egelman Report that Univision seeks to exclude as ████████ ████████████████████████████████ ██████████. Egelman Rep. ¶9 (Mot. Exhibit A). A cursory review of that summary reveals that Dr. Egelman is ████████████████████████████████ ████████████████████████████████████ ████████████████████████████████████ ██████████[5] That Dr. Egelman's opinion may embrace an ultimate issue—why or how the Pixel transmissions occurred—does not make it objectionable. *Diaz v. Centurion of Fla., LLC*, 2022 WL 21781606, at *3 (S.D. Fla. Jan. 25, 2022) ("[T]estimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." (quoting Fed. R. Evid. 704(a)).

*Second*, whether evidence exists that Univision ████████████████████████ ████████████████████████████████████ ████████████████████████████████████

---

[5] There is no dispute that Univision ██████████████████████████. *See* Def. SMF ¶¶5-8, 10, 12-13.

███████████ This distinction is critical, but one that Univision improperly attempts to conflate. *See In re Delta/Airtran Baggage Fee Antitrust Litig.*, 245 F. Supp. 3d 1343, 1358-59 (N.D. Ga. 2017) ("[T]estimony at trial [that] will focus on whether Defendants' conduct was consistent with anticompetitive coordination, as opposed to whether Defendants in fact 'colluded'" is admissible under *Daubert* (collecting cases)).

*Third*, Univision cannot point to any portion of the Egelman Report in which Dr. Egelman articulates an opinion that ████████████████████████. Indeed, a review of Dr. Egelman's full deposition testimony—not just those portions that Univision selectively quoted— makes clear that he is not opining that Univision ██████████████████████████ ██████████ but rather, that Univision intentionally installed the Pixel on its Website, and what information was available to Univision at the time of installation:

A.   Is Univision claiming the website was hacked and someone else installed the pixel because that would be an interesting development.

Q.   Do you want me to ask the question again?

A.   <u>I mean, installing the pixel requires one entering into a legal contract with Meta, getting the code from Meta to do so, configuring it for that client's account. In this case, Univision adding their account information into pixel, putting it on their website and integrating it with their existing web content -- all of those seem like overt and intentional actions.</u>

I don't know how someone accidentally goes through these procedures.

Q.   Is one of the opinions that you intend to offer in this case that Univision NOW intentionally disclosed PII to third parties?

A.   ***It is not my opinion***, it is public information that the pixel is used for this purpose. <u>It is in Facebook's documentation when you sign up for an account to use the pixel -- this is how they market it and so to say that Univision doesn't know that the data was going to be disclosed by using the pixel, that just defies all logic.</u>

Egelman Dep. 35:13-36:12 (Exhibit B) (emphasis added; underline indicates testimony omitted by Univision in its Motion). Dr. Egelman is doing nothing more than pointing to publicly available information that he observed and articulating an opinion on an ultimate issue, an unremarkable act that is well within what an expert is permitted to do.[6] *Diaz*, 2022 WL 21781606, at *3. In sharp

---

[6] Notably, while Dr. Egelman testified that it "defies all logic" that Univision would not have known the Pixel was going to disclose information, he expressly stated that it was ***not*** his "opinion" that Univision intended to disclose information. Similarly, despite Univision's attempt

contrast, to establish the knowledge element of a VPPA violation, Plaintiffs would need to demonstrate that Univision "knowingly disclos[ed]" PII—which Plaintiffs will do, in part, by



. Vint Dep. 99:9-22 (Exhibit D). And Univision similarly conceded in its own Statement of Material Facts that ███████████████████████████████████████

███████████████████████████████████████ Def. SMF No. 13

(emphasis added).

*Fourth*, Dr. Egelman's opinion as to what information was disclosed via the Pixel is a factual observation—not a legal conclusion as to ████████████. Notably, in reporting his findings (Egelman Rep. ¶¶49-53 (Mot. Exhibit A)), Dr. Egelman concludes that the Pixel would have ███████████████████████████████████████████████

███████████ (*id.* ¶52). Nowhere does he conclude that ████████████████████████████████

██████████████████████████████████████.

*Fifth*, Univision notes that Dr. Egelman "repeatedly references" the VPPA term "personally identifiable information" (Mot. at 10), but critically, makes absolutely no effort to demonstrate how any one of those references constitutes an impermissible legal opinion (*id.*). In fact, Univision does not argue that any of Dr. Egelman's references to "personally identifiable information" constitutes an impermissible legal conclusion. Dr. Egelman's references to a statutory term are unexceptional; simply because a term is statutorily defined does not mean that

---

to bait him into admitting that ████████████████████████████████████████
██████████████████ Egelman Dep. 36:4, 11 (Exhibit B). This careful testimony demonstrates that Dr. Egelman distinguishes between what he observed as a practical matter, and legal conclusions that are not the province of an expert. Indeed, Dr. Egelman explained he was not offering legal opinions and made this distinction multiple other times during his deposition. *E.g.,* Egelman Dep. 34:7-10 ("I am not hired as a legal expert"); *id.* 12:21 ("I am not a legal expert"); *id.* 37:11 ("I am not opining about the legal standard."); *id.* 37:18-19 ("I don't know what the legal negligence standard is. . . ."); *id.* 49:1-2 ("I am not offering a legal opinion . . . ."); *id.* 57:7-12 ("[F]or this purpose, I am not opining on whether or not, you know, there was consent under the VPPA, whether I am forming a legal opinion about consent in this case. I am pointing out that as a practical matter, I was not shown any evidence that users were explicitly asked whether or not it would be okay to share data."); *id.* 200:3-4 ("I am not opining on" a legal definition of negligence). Moreover, multiple objections to improper questions asking Dr. Egelman to opine on legal conclusions were interposed. *See, e.g.,* Egelman Dep. 33:23-34:1; 34:11-15; 34:25-35:5.

an expert may not refer to it in rendering his or her opinions. Likewise, Dr. Egelman's testimony that the term "personally identifiable user information" is found in various statutes—which Univision attempts to portray as legal analysis—is simply a factual observation. Indeed, Dr. Egelman specifically explained in his deposition that he is "not offering a legal opinion" as to what constitutes PII in the Egelman Report, but rather in referring to personally identifiable information he was referring to "what that term is commonly understood to mean." Egelman Dep. 48:2-49:3 (Exhibit B).

### B.    Dr. Egelman's Opinions Are Reliable and Not Speculative

The Eleventh Circuit has described the reliability inquiry as "a flexible one" that gives to district courts "substantial discretion in deciding how to test an expert's reliability." *Rink*, 400 F.3d at 1292. This is because "[s]ometimes the specific *Daubert* factors will aid in determining reliability; sometimes other questions may be more useful. As a result, 'the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable.'" *U.S. v. Frazier*, 387 F.3d 1224, 1262 (11th Cir. 2004) (quoting *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 151-52 (1999)).

Univision posits that Dr. Egelman's opinions should be excluded because they are speculative and therefore unreliable. Mot. at 11-13. In doing so, Univision ignores Dr. Egelman's factual analysis. At most, Univision's arguments boil down to a disagreement over controverted facts or the proper interpretation of facts—neither of which are proper grounds to disqualify an expert under *Daubert*. *Delta/Airtran*, 245 F. Supp. 3d at 1366 ("Just as the Court declined to exclude Singer's opinions because he relied on facts that Defendants dispute, it declines to exclude Dick's opinions because he relies on facts that Plaintiffs dispute.").

*First*, Dr. Egelman's analysis dispels Univision's misstated assertion that he guesses what the Pixel "would have" disclosed. Mot. at 12. *See, e.g.,* Egelman Rep. ¶¶35-38 (Mot. Exhibit A) (detailing preparation and considerations for testing); *id*. ¶¶39-42 (████████████████████████ ████████████████████████████████████████████████████████████████████); *id*. ¶¶43-46 (network traffic analysis and discussion and analysis of browser use and impact on information disclosure); *id*. ¶¶47-48 (corroboration of findings using public data sources). Inexplicably, Univision cites to what it previously asserted were Dr. Egelman's impermissible legal conclusions relating to its disclosure of PII to Meta via the Pixel, but does not cite a single portion of either the Egelman Report or Dr. Egelman's deposition testimony in support of its

assertion that Dr. Egelman "clearly does not know" what the Pixel disclosed.

To the extent that Univision attempts to manufacture fault on the part of Dr. Egelman for ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████ Univision Dep. 32:3-22 (Exhibit A). And in any event, far from unreliable speculation, Dr. Egelman's conclusion that the Pixel disclosed prerecorded video titles and URLs to Meta is confirmed by Univision's own admissions that it intentionally "configure[ed] the Pixel to transmit to Meta the names of prerecorded videos played by Univision NOW subscribers" (Def. SMF ¶13) ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████. Vint Dep. 99:9-22 (Exhibit D).

*Second*, Univision's argument is particularly disingenuous because Dr. Egelman specifically considered and cited to Univision's own documents detailing ███████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ██████████████████████████████████████ Egelman Rep. ¶¶50-51 & n.65-70 (Mot. Exhibit A) (citing Exhibit C (MARTINEZ000530-539)); *see also* Egelman Rep. ¶¶33-34 (citing public Meta documents and detailing events that are collected and reported to Meta by default). Indeed, having examined the Engineering Tickets (which Univision produced in discovery), Dr. Egelman concludes that ███████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████ Egelman Rep. ¶51. And Univision's corporate representative testified that ███████████████████████████████████████████. Univision Dep. 114:9-13 (Exhibit A). Univision cannot explain how Dr. Egelman "clearly does not know" what the Pixel disclosed when he thoroughly considered Univision's own documents to arrive at his opinion about what exactly the Pixel disclosed.

*Third*, Dr. Egelman's conclusion that t██████████████████████████████████ ███████████████████████████████████████████████████████████████

[REDACTED]

[REDACTED]

[REDACTED][7] Exhibit L. Notably, Meta [REDACTED]

[REDACTED]

[REDACTED]

[REDACTED] Egelman Reb. Rep. ¶¶18, 22 (Mot. Exhibit B). Relevant here, that information includes: [REDACTED] (*id*. ¶¶18(a), 22(a));

[REDACTED] (*id*. ¶¶18(f), 22(s));

[REDACTED] (*id*. ¶¶18(g), 22(j));

[REDACTED]

[REDACTED] (*id*. ¶¶18(l) & 18(r), 22(l) & 22(w)); and

[REDACTED] (*id*. ¶¶18(q), 22(b)).[8]

Significantly, Univision [REDACTED]

[REDACTED]. *See* Mot. at 4 (disputing Egelman Reb. Rep. ¶¶4, 19-20, 21-22, but not ¶18). Nor, with respect to [REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

---

[7] Dr. Egelman analyzes and arrives at conclusions with respect to [REDACTED]

[REDACTED]

[REDACTED]

[8] To the extent that Univision maintains Dr. Egelman's opinions should be excluded because [REDACTED]

[REDACTED]

Meta Dep. 45:18-25; 96:2-10 (Exhibit J). Dr. Egelman explained that [REDACTED]

[REDACTED] Egelman Reb. Rep. ¶26 (Mot. Exhibit B). *Marmol v. Kalonymus Dev. Partners, LLC*, 2023 WL 6534410, at *3 (S.D. Fla. Sep. 5, 2023) (Scola, J.) ("Missing from the Sellers' argument, however, is why Habibi's experience in the field is an insufficient foundation to support his opinions."). If Univision believes that the "hashed_identifier" value represents something other than a Univision NOW subscriber's Facebook ID, it is free to cross examine Dr. Egelman on that topic at trial. *Jordan v. Filippone*, 2021 WL 1564430, at *5 (S.D. Fla. Apr. 21, 2021); *Delta/Airtran*, 245 F. Supp. 3d at 1366.

[REDACTED] [9]

That Univision simply disagrees with the facts upon which Dr. Egelman bases his opinion is not a reason to exclude his testimony. *Jordan v. Filippone*, 2021 WL 1564430, at *5 (S.D. Fla. Apr. 21, 2021) ("Defendants may not, however, use a Daubert motion and exclude an expert simply because of disputed allegations and an expert that bases an opinion on one set of facts over another."); *Delta/Airtran*, 245 F. Supp. 3d at 1366 ("Just as the Court declined to exclude Singer's opinions because he relied on facts that Defendants dispute, it declines to exclude Dick's opinions because he relies on facts that Plaintiffs dispute.").

*Fourth*, [REDACTED] is indisputably relevant, particularly to Class-wide damages. Mot at 12. [REDACTED]. The VPPA provides that the Court may award actual damages or liquidated damages of not less than $2,500 to "[a]ny person aggrieved by any act . . . in violation" of the VPPA. 18 U.S.C. § 2710(c)(1), (2). Accordingly, for every violation of the VPPA, Univision could be liable for at least $2,500.

*Fifth*, what Univision refers to as [REDACTED] Egelman Rep. ¶45 (Mot. Exhibit A). Dr. Egelman's deposition testimony that [REDACTED] (Egelman Dep. 125:15-18 (Exhibit B) (emphasis added)) [REDACTED]. To the extent there are any inconsistencies in the Egelman Report or Dr. Egelman's deposition testimony, that goes to the weight of his opinion, not its admissibility. *Taylor v. Novartis Pharm's Corp.*, 2013 WL 85168, at *6 (S.D. Fla. Jan. 7, 2013) (Cohn, J.) ("Defendant may cross examine Dr. Broumand regarding any inconsistencies presented

---

[9] Univision's reliance on *R & R Int'l, Inc. v. Manzen, LLC*, 2010 WL 3605234 (S.D. Fla. Sep. 12, 2010) is inapposite. There, the court found that an expert's valuation of a company was speculative and unreliable in part because he did not rely upon that company's actual financial data in valuing lost profits. *Id*. at *14. Here, Dr. Egelman relied upon [REDACTED]

in his expert report."); *Dopson-Troutt v. Novartis Pharm's Corp.*, 2013 WL 12184290, at, *1 (M.D. Fla. Mar. 14, 2013) ("[A]ny inconsistencies between Dr. Broumand's testimony and his expert report '[go] to the weight rather than the admissibility of his opinion.'" (citing *Taylor*, 2013 WL 85168, at *6)); *In re AndroGel Antitrust Litig.*, 888 F. Supp. 2d 1336, 1356 (N.D. Ga. 2012) ("[C]ontradictory expert testimony is grounds for cross-examination, not exclusion" (citing *Janopoulos v. Harvey L. Walner & Assoc., Ltd.*, 866 F. Supp. 1086, 1096 (N.D. Ill. 1994))).



  *Sixth*, Dr. Egelman's conclusion that ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ Univision points to its own Statement of Material Facts ¶¶40-41 in support of the notion that ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ Mot. at 13. But Def. SMF ¶¶40 and 41 say no such thing. Both ¶¶40 and 41 focus specifically ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ Def. SMF ¶¶40, 41 (▮▮▮▮▮▮▮▮▮▮); *see also* Meta Dep. 114:7-25, 119:17-120:4 (Exhibit J) (same). In fact, Meta testified that that ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ Meta Dep. 66:2-11.[10]

This testimony is also consistent with Dr. Egelman's conclusion that ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮. Egelman Rep. ¶45 (Mot. Exhibit A). Moreover, Univision is able to identify its own subscribers—and in fact identified at least 35,845 subscribers who viewed at least one prerecorded video on the Website. Class Cert. Mot. at 5. ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ (Egelman Dep. 125:15 (Exhibit B))— which, critically, Univision does not dispute. *See* Mot. at 12-13.

  *Finally*, Univision's attempt to discredit what it calls Dr. Egelman's ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ (Mot. at 5, 13) fails because a cursory review of the Egelman Rebuttal Report reveals that it is nothing more than a distortion of the record. Dr. Egelman did not, as Univision implies,

---

[10] In other words, ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮, and it makes no sense to exclude Dr. Egelman's opinions on this basis as Univision insists. Mot. at 13 & n.10.

 Mot. at 5. Rather, Dr. Egelman pointed out that ███████████████ ███████████████████████████████████ ███████████████████████████████████ ████████████████████████████ Egelman Reb. Rep. ¶29 (Mot. Exhibit B).[11] Indeed, Dr. Egelman's opinion is not only correct and admissible, but also confirmed by ████████████████████████████ ███████████████████████████████████ ████████████████████ Univision Dep. 71:20-72:18 (Exhibit A).

**C.      Dr. Egelman's Martinez Disclosure Opinions Are Reliable**

Meta produced the ████████████ on May 3, 2024, one month after Dr. Egelman submitted the Egelman Report with Plaintiffs' Class Certification Motion on April 2, 2024. Consequently, and as Univision acknowledges, Dr. Egelman's opinions with respect to the ████████████ are entirely contained in the June 6, 2024 Egelman Rebuttal Report. Notably, Univision limits what it refers to as the Martinez Disclosure Opinion to just three paragraphs of the Egelman Rebuttal Report: ¶¶3, 19-20. Mot. at 4.

*First*, Univision's argument—████████████████████████████ ██████████████████—is a repetition of the same argument it made in its Motion to Strike (at 8-9, 15-16) and Motion for Summary Judgment (at 14), repackaged here in the form of a *Daubert* challenge. Mot. at 14. This gives away the game; as courts have uniformly held, the fact that Univision merely disagrees with the factual bases underlying Dr. Egelman's opinion is not grounds to exclude his opinion under *Daubert*. *Jordan v. Filippone*, 2021 WL 1564430, at *5 (S.D. Fla. Apr. 21, 2021) ("Defendants may not, however, use a Daubert motion and exclude an expert simply because of disputed allegations and an expert that bases an opinion on one set of facts over another."); *Delta/Airtran*, 245 F. Supp. 3d at 1366 ("Just as the Court declined to exclude Singer's opinions because he relied on facts that Defendants dispute, it declines to exclude Dick's opinions because he relies on facts that Plaintiffs dispute.").

---

[11] Whether or Dr. Egelman is pro-consumer is irrelevant to his observation that Univision's own purported expert failed to consider the company's own deposition testimony. Indeed, Univision does not even purport to seek to exclude Dr. Egelman on grounds of bias.

*Second*, Univision cherry-picks the single word ███████████████████████

█████████████████████████████████████████[12]████████████████████████

████████████████████████████████████████████████████████████. Mot.

at 14. Notably, Univision relies on its Statement of Material Facts ¶¶40-41 for the notion ████

██████████████████████████████ Mot. at 14. But the portion of the Meta deposition that

Def. SMF ¶40 cites refers to ███████████████████████████████████████

████████████████████████████████. Meta Dep. 113:18-114:25 (Exhibit J). And

the portion of the Meta deposition that Univision's Statement of Material Facts ¶41 cites ████

███████████████████████████████████████████████████████

████████████████████████████████████ Meta Dep. 66:2-11. Indeed,

based ██████████████████████████████████████████████████████

████████ Exhibit 3 to Composite Exhibit E to Univision NOW's Notice of Filing (ECF No. 98).

     *Third*, Univision's assertion that Dr. Egelman █████████████████████████

████████████ is a deliberate distortion of the record. Mot. at 14. In fact, Univision never showed

Dr. Egelman the Martinez Event Data during his deposition. *See* Egelman Dep. 3 (Index of

Exhibits) (Exhibit B). The transcript makes clear that █████████████████████████████

█████████████████████████████████████████████████████████.

Egelman Dep. 142:13-145:6. ████████████████████████████████████

████████████████████████████ *Id*. 145:5-10.

     *Fourth*, Univision offers no evidence to support its belief that Dr. Egelman was "█████

██████████████████████████████ Mot. at 14. Even the portion of the Egelman Deposition that

Univision cites shows only that Dr. Egelman ███████████████████████████

███████████████████████████████████ Mot. at 14; Egelman Dep.

147:15-18 (Exhibit B). That Dr. Egelman was able to take ██████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████.

---

[12] Univision previously filed a sealed copy of the May 3, 2024 Martinez Event Data production
cover letter as Exhibit 3 to Composite Exhibit E to Univision NOW's Notice of Filing (ECF No.
98).

*Fifth*, Univision's claim that Dr. Egelman ████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████ Indeed,
as Dr. Egelman points out, Meta itself ████████████████████████████████████
████████████████████████████████████████████████████████████████████████
█████████ Egelman Reb. Rep. ¶32 (Mot. Exhibit B). That Dr. Egelman ████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
█████████████████████████████████████████████████ Vint Dep. 134:4-8 (Exhibit
D).

*Sixth*, Univision ██████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████ As demonstrated above, Dr. Egelman ██████████
████████████████████████████████████████████████. *Supra* at 12. Significantly,
████████████████████████████████████████████████████████████████████████
█████████████████████████████████████████. *Id.*; *see also* Egelman Reb.
Rep. ¶¶18(a), (f), (l), (q), and (r) (Mot. Exhibit B). Just as significantly, ██████
███████████████████████████████████████████████. *See* Mot. at 4 (disputing Egelman
Reb. Rep. ¶¶4, 19-20, 21-22, but not ¶18). And, as Univision's own expert testified, ██████
████████████████████████████████████████████ Vint Dep. 134:4-8 (Exhibit
D).

### D.      Dr. Egelman's Testimony Would Assist the Jury

Finally, Univision summarily argues that Dr. Egelman's opinions would not assist the jury.
Mot. at 16. Notably, Univision does not attempt to support any of its scattershot contentions with
any references to the record.

*First*, Univision maintains ██████████████████████████████████████ ████████████████████████████████████████████████. This is wrong. Univision cannot ██████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████.[13]

*Second*, as demonstrated above, Dr. Egelman is not offering any opinion as to whether Univision ████████████████████████████████████ *Supra* at 7-9. Univision is ████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████. *See* Def. SMF ¶¶5-8, 10, 12-13.

*Third*, as demonstrated above, Dr. Egelman's purported ██████████████████████

██████████████████████████████████████████████████████

███████████████████████████. *Supra* at 15. And Dr. Egelman's opinion is not nearly as "dangerously prejudicial" as Univision's own admission that ████████████████████████

██████████████████████████████████████████████████████

█████████████████████████ Univision Dep. 71:20-72:18 (Exhibit A).

## V.      CONCLUSION

For all of the foregoing reasons, the Court should deny the Univision's Motion to exclude Dr. Egelman's testimony in its entirety.

---

[13] *Marmol v. Kalonymus Dev. Partners, LLC*, 2023 WL 6534410 (S.D. Fla. Sep. 5, 2023) is inapposite. There, the expert was excluded in part because "vast swaths" of the excluded expert's report "require[d] no understanding or experience beyond that of an average citizen" and there was nothing in the facts of that case that required "anything more than a lay understanding of the parties' business transaction." *Id*. at *2. Notably, while Univision manufactures several challenges to Dr. Egelman's expert opinions, it does not challenge him on the basis that his conclusions require no more than the lay understanding of an average citizen.

Dated: September 17, 2024

Respectfully submitted,

By: /s/ *Brandon T. Grzandziel*

Brian Levin (26392)
Brandon T. Grzandziel (58732)
LEVIN LAW, P.A.
2665 South Bayshore Drive, PH2
Miami, FL 33133
Telephone: (305) 402-9050
Facsimile: (305) 676-4443
E-Mail: brian@levinlawpa.com
       brandon@levinlawpa.com

Matthew R. Wilson (*pro hac vice*)
Jared W. Connors (*pro hac vice*)
MEYER WILSON CO., LPA
305 W. Nationwide Blvd.
Columbus, Ohio 43215
Telephone: (614) 224–6000
Facsimile: (614) 224–6066
Email: mwilson@meyerwilson.com
      jconnors@meyerwilson.com

*Counsel for Plaintiffs and the Proposed Class*

## CERTIFICATE OF SERVICE

I certify that on September 17, 2024 the foregoing was filed using the Court's CM/ECF system and will therefore be electronically served on all parties' counsel of record.

I further certify that on September 17, 2024, an unredacted version of the foregoing was served on counsel for Defendant via email.

/s/ *Brandon T. Grzandziel*
Brandon T. Grzandziel